Good morning, Your Honors. May it please the Court, Kenneth M. Stern, pro se. This case involves the theft of an email posted to a mutually contractual confidential listserv whereby attorneys can share their thoughts on various cases and constitutes attorney work product. I've stated in my second amended complaint various federal and state claims, all of which were dismissed under Rule 12, Motion for Dismissal, leaving only my copyright claim. That claim was ruled against me on summary judgment with the Court ruling that the writing was not copyrightable. There are many issues in this case. I'd like to first address one factual issue that I think has kind of gotten lost among all the issues, especially lost by the district court in the motion to dismiss, and that involves the issue of authorization to access the confidential listserv. And I point out Porter's, or excuse me, Excerpts of Record, page 529, paragraph 41, where I have pled that one of the ways this could have been done or was done was by Sarah Weinstein, who was not a member of that listserv, being given unauthorized access to the listserv by her brother, Robert Weinstein. Under that theory, her clearly, notwithstanding NOSALT, notwithstanding LVRC, her authorization or her access was not authorized, so she would be directly an unauthorized person and her brother would be come in for liability under either an aiding and abetting or a conspiracy theory. Mr. Stewart, could I clarify a few things for my own understanding at least? One, do all of your claims depend on what you started with, that these were confidential communications constituting work product, as they're described in the agreement that everybody signed with the CAALA listserv? Well, I don't think it depends upon them necessarily being work product, but also the independent basis that these were the basis of a confidentiality agreement. They were work product because they were my thoughts and impressions, not only about the case for which they were posted, but potential future litigation between either myself or my client versus this accounting firm for basically possible false or fraudulent billings. And that's clear to me that that's work product. Well, it was one sentence, right? Yes. What did the sentence say? I'm sure you've got it imprinted in your memory. Well, it said basically, does anyone have any information on Vanita McMorris or White Zuckerman regarding whether or not they have churned or overbilled in any of your cases? And that sentence was my thought process being synthesized from my analyzing, my knowledge and expertise in certain areas, my looking at the facts of what had gone on between myself and Vanita McMorris, my own investigation in the matter with some other people who did this kind of work to find out the reasonable of the work, then deciding was I going to present this as a long hypothetical, was I going to present it in a short sentence, was I going to present it only to Vanita McMorris, only to White Zuckerman, only as to churning, only as to overbilling. What is the import of that sentence? Aren't you just seeking information by that sentence? I am seeking information. That's the import of the sentence, right? Yes. Regarding these specific individuals and these specific concepts. Because I was – I know everybody signed this agreement, but I'd really start with a few basic questions, whether Mr. Weinstein or Weinberg. Weinstein. Weinstein had an obligation to you to maintain something is confidential. This agreement was called the Joint Prosecution and Confidentiality Agreement. But, you know, to create a privilege that's going to survive anything, usually certain standards have to be met. And then, again, looking at this, at the motion to dismiss stage of the Iqbal standard, you assert in what you filed, the complaint, I believe, that this was work product. This was confidential. But without any of the underlying factual enhancement that Iqbal and Twombly said are generally required, and then by the time that you were in court, the confidentiality of the statement, if it was confidential, had been lost. So I thought that the district judge could look at your statement and say, is it plausible that this is work product? Is it plausible that this is the kind of confidentiality that, for example, could violate your privacy under the California Constitution? Well, Your Honor, the court did find it was a violation of my privacy. They just said it wasn't serious enough. But I pleaded in the Second Amendment complaint everything from that mutual confidentiality agreement that related to mutual confidentiality. And it's also a part of the summary judgment documents. And that clearly obligated each person who signed that confidentiality agreement. It was binding. It was a contract as to each other person who was involved in that confidentiality agreement and the listserv. And the fact that it may have been given to many people does not, and I cover this in my briefs, does not constitute any waiver of that confidentiality. It's no different if a lot of lawyers who are sole practitioners or small firms get together and decide we can help each other by sharing our expertise through this confidentiality agreement as if it was a mega law firm with a thousand lawyers who maybe have all would have access to this e-mail, but they're one law firm. But I think that analogy makes sense, but I don't know that it would be impervious, say, to discovery under Rule 26 if it was a communication within the law firm. Again, I'm looking at how serious is the breach because to me it's very serious, Your Honor, otherwise I wouldn't be here. I've been practicing law for over 34 years. I do my best to practice in an honest, ethical manner and being a good attorney for my clients. And when I'm having my work product, my confidential communications stolen from me and given to the adverse persons who I comment in, and really litigation is, you know, I take that very serious. So on the privacy claim that you're arguing about now, California State law requires an egregious, egregious breach of social norms for the republication, for it to be an invasion. How is this egregious? Well, I think litigation, espionage, and stealing another attorney's confidential communication where that person is seeking the advice of other counsel, of other I was harmed in that my ability to represent my clients and be able to utilize this listserv has been compromised. This is a very important tool for me as a sole practitioner to be able to seek out the advice and counsel of other lawyers. I don't have ten or 15 or 100 or 1,000 other lawyers part of my firm that I can consult and consult with. This is a tool for me where I can do that. And I'd like to save, if I could, my last minute. Yes, you may. Thank you. May it please the Court? Adrian Barrio for appellee Robert Weinstein. All of our points are clearly expressed in our brief. If the Court has specific questions, I just want to make one point about what Your Honor said. Throughout this case, Mr. Stern has insisted that this email is work product. That's been the linchpin of this entire matter. It wasn't until he voluntarily disclosed the email itself very late in the game, and that was because trial was approaching, and he has a burden of proof at trial. He has to meet that burden that he had to disclose it, that the generic contents of the email was disclosed. And at that point, that's when we move for summary judgment. And that's the whole basis here. That's why we think this case is frivolous, because had that been disclosed from the start, we could have taken action early on, mitigated a whole lot of attorneys' fees in resolving this matter, and disposed of it as we did dispose of it on summary judgment. It's not work product. Mr. Stern was deposed at length on this issue. He admitted at deposition. He wasn't anticipating suing any clients. But I think the district court really said it best. You have an analogy. This is incidental. This was an email. Incidental to the underlying representation of the plaintiff in the personal injury action. He was simply upset that a forensic accounting firm that he had hired may have been overbilling the file. That has nothing to do with the underlying representation. It's not work product. It's self-evident that it's not work product in the statement itself. And the last point I want to make here is Judge Kaczynski, in the U.S. v. No-Sol case, made a point in ruling as he did, in ruling as the panel did in that case. Is that an en banc case? It's an en banc case. Excuse me, Your Honor. He made a point that I think applies to copyright as well, to all the claims in this case. And that is, emails are sort of a fundamental. You can't criminalize generic activity. And if the court rules that forwarding an email that seeks generic factual information is somehow a violation of copyright or somehow a criminal violation, that's going down a very dangerous slope. But it was a violation of the agreement that your client entered into with whatever that organization is. Well, Your Honor, in the Breca case v. LBRC Holding, it's a use restriction. It is akin to a use restriction. And both Breca and No-Sol make clear that in order to exceed authorization, the meaning of the statute, merely violating a use restriction isn't enough. The person, the CALA in this case, has to rescind the right of Mr. Weinstein to access the CALA listserv. That was never done in this case. There's no argument that it was done in this case. So that's why that particular use restriction doesn't help him in terms of his computer fraud and abuse action cases and all of those claims. And it's irrelevant to the copyright claims. Confidentiality has nothing to do with copyright. The issue there is originality. And the district court correctly found that it's just a simple, generic, factual email. The idea is inseparable from the expression. The expression is inseparable from the factual idea expressed. And that is why the court found it was not original. If the court has any further questions, I'd be happy to address them. Otherwise, we'll stand on our briefs. I have no questions. Thank you. Do you have any further questions? Nothing further right now. Thank you. We're hearing from the other Weinstein. I assume first. May it please the court. Thank you, Your Honor. My name is Steve Belolove, and I represent Sarah Weinstein. A wise man once told me, If you don't want others to read what you have to say, don't post it on the Internet, which is precisely what happened here. Mr. Stern posted something on the Internet, and now he's mad that other people have read it. I think the district judge characterized the case perfectly when he wrote, This is much to do about nothing. Just to comment on a few arguments that Mr. Stern made, Now he's throwing against the wall the argument that if Sarah Weinstein accessed the LISTSERV, that that would be an unauthorized use. Well, this was before the district court on summary judgment, and Mr. Stern presented absolutely no evidence that Sarah Weinstein accessed the LISTSERV in an unauthorized manner. I think I'm not certain, maybe confused about the procedural posture of this. I was under the impression, perhaps the misimpression, that all of the claims except the copyright claim were resolved under the motion to dismiss standard, not the motion for summary judgment standard. Am I right or wrong about that? That's true, Your Honor. Because Those were dismissed early on. Because the nature of the question is very important in some cases to the answer. If it's a motion to dismiss, the issue is, is this claim implausible? Is it inadequately pled and implausible that summary judgment, if you look at the evidence and decide whether a reasonable fact finder could come out the plaintiff's way. So why, I perhaps should have asked this to your colleague, why is the claim, for example, that it's work product implausible? It might prove to be wrong at summary judgment or trial. Why is it implausible? It's implausible that this is an actual work product. Well, because, Your Honor, it's a question seeking information that was posted on the Internet. It has nothing to do with litigation. There was no ongoing litigation against White Suckerman. It could be work product if it were in anticipation of litigation. Possibly. But there's no evidence of that either. It has nothing to do with litigation strategy or the thought process. And when I introduced myself this morning, I could say, good morning, Your Honor. My name is Steve R. Belolove or Steve Ross Belolove or Belolove Steve R. And I can come up with all different scenarios like Mr. Stern has in this case, twisting the words to his simple question around and say, well, the manner in which I introduced myself made it work product because I did it for a specific reason. It is simply ridiculous. It is not work product. It has nothing to do with litigation strategy or representing his client in any way. It's a simple question. He was seeking information from his colleagues. And just to close on that one point, Your Honor, with regard to Sarah Weinstein's supposed unauthorized access, Mr. Stern has argued that he should have been given the right to amend on various bases. And the fact is that if he is given the – in order to get the right to amend, you have to present evidence that shows you have a colorable claim to give you that right to amend. And he didn't do that. He had already – This was the third complaint that he wanted to – That's correct, Your Honor. He wanted to file a third amended complaint. That's right. This is before the Court on the second amended complaint. So he was asking to file a third amended complaint. It would have been the fourth complaint. True. And just briefly in closing, I think the briefs pretty much characterize or pretty much address all of the arguments that Mr. Stern has made. But I would like to emphasize Your Honor's point with respect to damages, because as a practitioner almost as long as Mr. Stern, I take offense to the fact, as my client does, who's practiced a long time and has never been suspended or had state bar charges filed against her, to imply that this was litigation espionage and that she has done something so terribly wrong. I apologize with all due respect. I take offense to that. I think this has blown way out of proportion, and it's time to put a stop to it as the district court ruled. Thank you, Your Honor. All right. Thank you, Mr. Stern. You know, I noticed you filed an amicus brief in Nozzle. Yes, Your Honor. Is that in support of Nozzle's argument? That was in support of the government's argument. And, in fact, yesterday the government in U.S. v. Pelicano filed their answering brief also addressing this. I'm sorry. What did you just say? There's a related case, U.S. v. Pelicano, and the government filed its brief yesterday in that case discussing Nozzle. I'd like to touch on a few issues here very quickly. As to our product, this was clearly a potential in anticipation of litigation. It expressed my thoughts and views that overbilling, churning, fraudulent billing may have gone on. And my client certainly or myself certainly would have the potential right, if we could not have resolved that, to bring an action based on that fraudulent billing. I'd also like to talk about this so-called timing of me giving them the right, which they obviously already had anyway because they took it from the listener. I gave it to them pretty much within a week or two after I was legally obligated to. They had three months to do discovery to obtain that from me, and they didn't do it. They delayed three months. So the saying that I delayed and didn't give it to them. I think the first point is the obvious one, that they obviously had it. Well, I mean, but putting that aside, they had three months to do discovery, which they didn't do. The deposition isn't even part of the record. And, again, this wasn't a general post to the Internet. It was posted to people, and perhaps I'm naive, who I believe were honorable lawyers who are going to uphold their vow under that confidential agreement and ethics of attorneys. I think that makes actually or touches on a very important point. You did sign this agreement. I doubt or question whether it could be characterized as a joint prosecution agreement, as that's a technical term, at least in the First Circuit. But I understand your disappointment. And, you know, it used to be when communities were smaller, you know, that somebody's reputation really counted for a lot. Your word was your bond if you said you were going to keep something confidential. You know, now you didn't apparently know Mr. Weinstein. It's not like, you know, you would sit down and have a cup of coffee and ask him this question or even talk to him on the telephone. The sense of community erodes with the impersonal nature of our communications. But, you know, whether that's a constitutional violation or potential criminal violations, another issue. That's not a question, but it's sort of an observation. Even assuming it isn't, which I don't assume, you still have the claim which I asked to amend for breach of confidentiality agreement. You also have the claim. Now I'm going to really sound like a district judge. You know, why is an abuse of discretion to say to a lawyer, you know, you've got to get it right at least the third time. You're not going to get a fourth bite at the apple when you see things are not going your way. As is in my paperwork, Your Honor, the second time, I could only take 10 of the 20 days to prepare that pleading because I was about to undergo major hip surgery. And I had to prepare for being in a nursing home for two weeks and a hospital for four days and be able to live my life. If I had that extra 10 days, perhaps I would have been able to do that. And I think some of the, for example, the theft claim was a little bit novel to me because we learn in law school and the general thinking is when you steal something, it's you're taking it from the person, taking it away from the person. And I discovered these cases cited in my brief. You can take data from somebody, and they still have the data, but it's still a theft. And that was something new to me. And, again, if I had that 10 days, perhaps I could have gotten that in there. But, again, this was surgery I needed for four years, and my health is important to me, and I could only take those 10 days. All right. Well, thank you very much, counsel. Stern v. Weinstein will be submitted.
judges: Wolf, Wardlaw, Gould